NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| Tina M. Izzo, | : | |
| Plaintiff, | : | Civ. A. No. 02-1536 (SRC) |
| v. | : | **OPINION** |
| JoAnne B. Barnhart,<br>Commissioner of Social Security, | : | |
| Defendant | : | |

**Chesler, District Judge**

This matter comes before the Court upon the appeal of plaintiff, Tina Izzo ("plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") finding plaintiff ineligible for Social Security Disability Benefits under the Social Security Act ("Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g), and having considered the submissions of the parties without oral argument pursuant to L. Civ. R. 9.1(b), denies plaintiff's appeal.

**I. Background**

Plaintiff filed this appeal on or around April 4, 2002, challenging the Commissioner's determination that she was able to make an adjustment to other work that exists in significant numbers in the national economy and thus, ineligible for disability insurance benefits ("disability

-1-

benefits"). Plaintiff initially filed applications for a Period of Disability, Supplemental Security Income, and Disability Insurance Benefits on February 2, 1996, asserting disability due to Lyme disease, Adjustment disorder and depressed mood, which commenced on November 30, 1995. (Tr. at 33-37, 39-43.) On June 11, 1996, plaintiff's application was denied. (Tr. at 45-47.) Plaintiff's subsequent application for reconsideration was denied on August 25, 1996. (Tr. at 54-55.) On October 23, 1996, plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ") and on March 16, 1998, plaintiff, represented by counsel, appeared and testified before ALJ Dennis O'Leary. (Tr. at 228.)

At the hearing plaintiff reported she suffered from Lyme disease which caused joint pain, fatigue, confusion, and dizziness. (Tr. at 17.) Plaintiff further testified her condition caused depression, difficulty concentrating, and as a result she lacked ambition and did not go out socially. (Id.) Plaintiff reported she could not walk a full block or to sit for more than ten to fifteen minutes due to pain and quickly became fatigued while standing. (Id.)

By decision dated April 6, 1998, ALJ O'Leary found plaintiff was able to perform sedentary work and therefore not disabled. (Tr. at 228-34.) On May 5, 1998, plaintiff submitted a Request for Review of the ALJ decision. (Tr. 235.) In an order issued February 23, 2000, the Appeals Council vacated the decision of ALJ O'Leary and remanded the matter to ALJ Daniel N. Shellhamer for further proceedings. (238-240.) Prior to her second hearing, plaintiff was sent for additional psychological and medical consultation. On remand, a vocational expert testified that an individual suffering from plaintiff's condition could not perform any of her past relevant work. (Tr. at 19.) However, the vocational expert also testified that an individual suffering from plaintiff's condition is capable of making an adjustment to other work that exists in significant

numbers in the national economy. (Tr. at 20.) At the time of trial, the results from the 2002 psychological evaluation were not available. The ALJ explained that once received, the report would be considered and made part of the record and copies would be sent to plaintiff and she would be able to request additional testimony on those findings. (Tr. at 324-35.) Plaintiff did not request an additional hearing and after incorporating the report into the record, the ALJ determined plaintiff was able to adjust to work that exists in significant numbers in the national economy. (Tr. at 20.) Accordingly, the ALJ found plaintiff was "not disabled" within the framework of Medical-Vocational Rule 202.22. (Id.)

In a decision issued February 7, 2001, ALJ Shellhamer made the following findings:

1. The claimant met the nondisability requirements for a Period of Disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act on November 30, 1995, the date she alleged she became unable to work, and had earned sufficient quarters of coverage to remain insured only through December 31, 1996.

2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. The claimant has Lyme's disease, candidiasis, and depression, impairments considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(b) and 416.920(b).

4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5. The [ALJ] finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6. The claimant has the following residual functional capacity: to perform a wide or significant range of light work; i.e, she has no exertional limitations, but can perform only simple one or

       two step instructions within well-set defined routines which do not require constant fine manipulation.

7. The claimant is unable to perform any of her past relevant work (20 CFR §§404.1565 and 416.965).

8. The claimant is a "younger individual between the ages of 18 and 44" (20 CFR §§404.1563 and 416.963).

9. The claimant has a high school equivalent education (20 CFR §§ 404.1564 and 416.964).

10. The claimant has transferable skills from skilled work previously performed as described in the body of the decision (20 CFR §§ 404.1568 and 416.968).

11. Although the claimant's exertional limitations do not allow her to perform a full range of light work, using Medical-Vocational Rule 202.22 as a framework for decision-making and based upon the testimony of the Vocational Expert, there are a significant number of jobs in the national economy that she could perform. Examples of such jobs include work as a hostess, housekeeper, and laundry worker.

12. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR §§ 404.1520(f) and 416.920(f)).

(Tr. at 21). Accordingly, ALJ Shellhamer found plaintiff was not entitled to a Period of Disability, Disability Insurance Benefits, or Social Security Income payments under the Act. (Tr. at 22.)

     Plaintiff filed a timely Request for Review of the ALJ Hearing Decision with the Social Security Administration Appeals Council on February 26, 2001. (Tr. at 7.) The Appeals Council affirmed the decision of the ALJ by letter dated February 8, 2002. (Tr. at 4-5.) Plaintiff then filed for reconsideration by this Court pursuant to 42 U.S.C. § 405(g).

## II. Discussion

Plaintiff challenges the decision of the ALJ asserting the ALJ failed to properly consider whether her multiple impairments met the listing and further contends the ALJ misunderstood the medical evidence and the severity of plaintiff's impairments.  Plaintiff also claims the ALJ ignored plaintiff's valid symptoms and discounted her functional and non-exertional limitations and erred in finding she is capable of performing work that exists in the national economy.

### A. Standard of Review

It is well settled that the Commissioner's decisions regarding questions of fact are conclusive before a reviewing court if they are supported by "substantial evidence in the record." 42 U.S.C. § 405 (g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000).  "Substantial evidence" means more than "a mere scintilla." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).  "It means such relevant evidence as a reasonable mind might accept as adequate." Id.  If the ALJ's findings of fact are supported by substantial evidence, this Court is bound by those findings, "even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

The Third Circuit has made it clear "that determination of the existence *vel non* of substantial evidence is not merely a quantitative exercise.  A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).  In reaching a conclusion that a claimant is capable of performing work, the ALJ must analyze all the evidence

and explain the weight the ALJ has given to probative exhibits. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). As the Third Circuit has held, access to the ALJ's reasoning is indeed essential to a meaningful court review. See Fargnoli, 247 F.3d at 42. Nevertheless, the District Court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Further, evidence not originally presented to the ALJ "cannot be used to argue that the ALJ's decision was not supported by substantial evidence." Matthews v. Apfel, 239 F.3d 589, 594 (3d Cir. 2001). Therefore, if evidence that was not before the ALJ is presented to the District Court, remand to the Commissioner is possible, but is only an option if "the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." Id. at 593. The Third Circuit requires that claimants present all material evidence to the ALJ in order to ensure "speedy and orderly disposition of Social Security Claims." Id. at 595.

B.  Standard for Awarding Benefits Under the Act

An individual may not receive disability insurance benefits under the Act unless he or she first meets statutory insured status requirements. See 42 U.S.C. § 423; see also Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). In order for a claimant to be considered disabled, she must first demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423 (d)(1)(A). Thus, a claimant is not disabled unless her "physical or mental impairment or impairments are of such severity that [s]he is not only unable

to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423 (d)(2)(A).

To demonstrate that a disability exists, a claimant must present evidence that her affliction "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). Although the ALJ must give the plaintiff's subjective complaints "serious consideration," those complaints alone are not enough to satisfy this threshold for establishing a disability. See, Burns, 312 F.3d at 129. Furthermore, the claimant bears the burden of proving the existence of the alleged disability. 42 U.S.C. § 423 (d)(5)(A).

After establishing a claimant has met the threshold eligibility requirements, the ALJ must undertake a five-step evaluation process in order to review a claim for disability insurance benefits. See 20 C.F.R. § 404.1520; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). In the first step, the ALJ must determine whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a). If the claimant is working and the work is substantial gainful activity, the application for disability benefits is automatically denied. See 20 C.F.R. § 404.1520(b). If the claimant is not employed, the ALJ proceeds to step two and determines whether the claimant has a "severe impairment" or "combination of impairments." 20 C.F.R. § 404.1520(c).

A claimant who does not have a "severe impairment" is not disabled. Id. An impairment is not severe if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); see Yuckert, 482 U.S. at 146.

Basic work activities relate to the ability and aptitude to perform most jobs and the physical functions that most jobs require.  See 20 C.F.R. §§ 404.1521(b), 416.921(b)(1).  It is not enough for a plaintiff to show that she had certain impairments, those impairments must also result in functional limitations that preclude work activity.  42 U.S.C. § 423(d)(2)(A); see Alexander v. Shalala, 927 F.Supp 785, 792-93 (D.N.J. 1995), aff'd, 85 F.3d 611(3d Cir. 1996); Daring v. Heckler, 727 F.2d 64 (3d Cir. 1984).

  If the impairment is found to be severe, the ALJ moves to step three to determine whether the impairment, or the combined impairments, meets or is equal to those impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing").  If so, the claimant is conclusively presumed to be disabled, and the evaluation ends.  See 20 C.F.R. § 404.1520(d).  If the impairment does not meet or equal a listed impairment under the Listing, the ALJ proceeds to step four, which requires a determination whether the limits imposed by claimant's impairment ("Residual Functional Capacity" or "RFC") prevent the claimant from returning to the work claimant performed in the past ("Past Relevant Work" or "PRW").  See 20 C.F.R. § 404.1520 (e).  If the claimant is found capable of performing PRW, the claimant is not disabled.  Id.  If the claimant is no longer able to perform PRW, the evaluation must continue to the last step.

  The fifth and final step in the evaluative process requires a determination of whether the claimant is capable of performing some other work available in the national economy.  In this last step, the burden shifts to the Commissioner to demonstrate "there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity."  Plummer, 186 F.3d at 428 (citing 20 C.F.R. § 404.1520(f)).  Benefits are denied if work exists in

the national economy in which the claimant could engage given the above-listed factors. Thus, entitlement to benefits is dependent upon a finding that the claimant is incapable of performing PRW or some other type of work in the national economy because of the impairments presented.

C. Plaintiff's Appeal

Plaintiff challenges the ALJ's findings at steps two, three and five of the evaluative process. Specifically, plaintiff asserts: at step two, the ALJ disregarded her asthma and psychological impairments as severe; at step three the ALJ failed to properly consider whether the multiple impairments met the listing; and at step five, the ALJ ignored plaintiff's valid symptoms and discounted her functional and non-exertional limitations and erred in finding she was capable of performing work that existed in the national economy.

*1. Step Two Analysis*

Plaintiff asserts the ALJ ignored plaintiff's asthma and failed to recognize it as a severe impairment and did not fully consider plaintiff's mental impairment and cognitive limitations presented to the ALJ after the hearing. However, this Court finds ALJ Shellhammer did consider plaintiff's asthma, both at the hearing and in review of her medical records, as well as the findings of plaintiff's psychological evaluations.

Plaintiff's asthma was addressed at the hearing before ALJ Shellhamer on September 26, 2000 and incorporated into the record along with all the findings of fact from ALJ O'Leary's April 6, 1998 opinion (Tr. At 15). Both the 2000 hearing and the 1998 opinion reflect that plaintiff reported her asthma was controlled by use of Proventil inhalers and that the asthma had

not prevented her from working. (Tr. at 230; 299-300.) At her second hearing plaintiff reported she had developed asthma as a teenager and that she used inhalers if she suffered shortness of breath and typically recovered within five to ten minutes of treatment. (Tr. at 299-300.) Plaintiff did not dispute the ALJ's statement that she had previously been able to work despite the condition. (Tr. at 301.) Plaintiff also stated the asthma was particularly severe when she was young due to her excessive activity, but reported she had only once had to go to the hospital in response to an attack, which occurred sometime around 1986-1990. (Id.)

It is the plaintiff's burden to demonstrate symptoms which are medically supported and which preclude work activity. Notably, no related clinical signs pertaining to asthma or shortness of breath are contained elsewhere in the record for the relevant period and no treating physician diagnosed plaintiff with these conditions. Indeed, when examined by Dr. Bagner in August 2000, plaintiff did not even report symptoms of asthma. (Tr. at 263.) When examined again in September 2000 by Dr. Iofin, plaintiff specifically denied any chronic medical conditions. (Tr. at 270.)

ALJ Shellhamer also considered plaintiff's psychological evaluations. The record reflects the ALJ reviewed the results of the treatment and findings from her 1996 psychological evaluation, her records from treatment at Ocean Health Medical Center from September 1997 - February 1998, and the September 2000 evaluation by Dr. Iofin. (Tr. at 15; 221-24; 16-17; 268-74.) Although the Dr. Iofin's results were not provided at the time of trial, the ALJ incorporated those findings into the record. (Tr. at 16-18.) In the opinion the ALJ summarized the findings, including the complaints and mental health history as reported by plaintiff. (Id.) The opinion noted Dr. Iofin's finding that, although plaintiff "would obviously benefit from psychotropic

medication and psychotherapy, he did not anticipate it would significantly improve her ability to function," and further, she "did not appear to be at risk of sudden or acute deterioration of her functioning at the time." (Tr. at 16.)  Most notably, Dr. Iofin concluded that plaintiff "did not appear to have a major psychiatric pathology which was deteriorating to her level of function." (Id.)

After consideration of the reports and plaintiff's testimony, the ALJ found plaintiff's depression was a severe impairment, but did not find the reported asthma or other asserted mental or cognitive impairments to be severe under the Act.  (Tr. at 21.)  As noted above, an impairment is not severe if it does not significantly limit a claimant's physical or mental capacity to perform basic work activities.  Review of the record therefore provides significant evidence to support the ALJ's conclusions at step two of the evaluative process and accordingly, this Court finds the ALJ did give adequate consideration to the severity of each of plaintiff's asserted impairments.

*2. Step Three Analysis*

Plaintiff further asserts the ALJ failed to properly consider whether the multiple impairments met or equaled impairments in the List and contends the failure of the ALJ to consider her asthma a severe impairment along with not having the report from Dr. Iofin at the time of the hearing tainted the determination at step three in the analysis.  However, this Court finds the record demonstrates that the ALJ did properly consider whether plaintiff's impairments combined medically equaled those on the List.

At the third step of the evaluative process, plaintiff bears the burden to demonstrate her

impairments met or equaled impairments on the List. See Sykes v. Apfel, 228 F.3d 259, 262-63 (3d Cir. 2000)(citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987)). If the ALJ determines that plaintiff's combined impairments did not meet or equal those on the List, the ALJ must set forth the reasons for that decision. Burnett v. Commissioner of the Social Security Administration, 220 F.3d 112, 119 (3d Cir. 2000). However, "Burnett does not require the ALJ to use particular language or adhere to a particular format in concluding his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Therefore, the ALJ need not explicitly state the Listings considered in the evaluative process, but rather the decision, read as a whole must illustrate the ALJ considered the appropriate factors to determine plaintiff did not meet the requirement for any listing. Id.

      Here, the ALJ's opinion discusses the evidence pertaining to physical disorders, specifically noting that "[d]espite [plaintiff's] many complaints of pain and trouble holding things, the consultative examiner . . . . indicated that claimant's ability to lift/carry, stand/walk, and to sit were not affected by her impairments and that she had no limitations regarding her abilities to reach, handle, feel, or push/pull." Tr. at 18. Furthermore, the ALJ noted that, in light of the reports of the treating and examining practitioners, he found plaintiff's reports of "her impairments and pain and their impact on her ability to work, seem exaggerated and are not generally credible." Similarly, the ALJ evaluated plaintiff's reported mental limitations and found the record reflected she "had 'good' ability to understand, remember and carryout [sic] short, simple instructions; to work with or near others without being distracted by them; to make simple work-related decisions . . . [and to] respond appropriately to changes in the work setting[.]" (Tr. at 18.) This finding is supported by the medical and psychological reports in the

record as discussed above.

Accordingly, this Court finds there is sufficient evidence on the record to support the finding by the ALJ that plaintiff's combined conditions did not rise to the level of those included on the Listing.

*3. Step Five Analysis*

Plaintiff also asserts there is not substantial evidence on the record to support the ALJ's finding that plaintiff had a RFC sufficient to perform work that exists in the national economy. Plaintiff argues the ALJ failed to perform an individual assessment of the plaintiff's RFC and ignored plaintiff's valid symptoms and discounted functional and non-exertional limitations. However, review of the record supports the finding by the ALJ that plaintiff had the RFC to perform light work, diminished by non-exertional impairments.  The ALJ found plaintiff only retained the ability to perform jobs that involve simple one or two step instructions within well-set defined routines and which do not require fine manipulation. (Tr. at 21.)

In the text of the opinion the ALJ provided a thorough summary of all the medical evaluations and reports discussing plaintiff's conditions.  (Tr. at 15-18.)  At trial the ALJ elicited testimony from the plaintiff about additional concerns, including plaintiff's asthma, as well as her subjective reports of pain and mental and emotional concerns beyond the scope of the medical reports in the record.  Moreover, review of the record provides no indication from any of the treating physicians which contradict the RFC determined by the ALJ.  The record demonstrates the ALJ did consider all of plaintiff's medical conditions as well as her complaints of pain and

other symptoms. In so doing the ALJ found that plaintiff did have exertional and non-exertional limitations, but also found that plaintiff's "statements concerning her impairments and pain, and their impact on her ability to work, seem exaggerated and are not generally credible in light of the reports of the treating and examining practitioners and the record as a whole." (Tr. at 18.)(citations omitted).

In finding there are other jobs existing in significant numbers in the national economy which the plaintiff can perform, the ALJ appropriately considered her various medical impairments, age, education, past work experience, and RFC. The record demonstrates the ALJ considered all of plaintiff's limitations discussed above, both in the opinion and at plaintiff's hearing, including plaintiff's age, education, and transferable skills from her past work. (Tr. at 21.) The ALJ also evaluated plaintiff's credibility in assessing her subjective complaints of pain and this court must lend "great weight" to the ALJ's findings in this regard. See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).

The ALJ also considered testimony of the vocational expert. The vocational expert first provided an assessment of plaintiff's skills acquired through her PRW. (Tr. 316-17.) Then the ALJ presented a series of hypotheticals involving plaintiff's various conditions and past work experiences to the vocational expert. (Tr. 317-21.) Plaintiff's attorney also had opportunity to pose questions and hypotheticals to the vocational expert. (Tr. at 321-24.) Although plaintiff's final psychological evaluation was not available at the time of trial, plaintiff testified she had been suffering from depression and there was another psychological evaluation in the record. As previously noted, the ALJ did enter the final evaluation into the record and the opinion reflects that the ALJ considered those results in his assessment.

Furthermore, although plaintiff asserts the ALJ's interview of the vocational expert was tainted by not having the results from her evaluation by Dr. Iofin, plaintiff did not present that concern or request a supplemental hearing on the findings for that purpose.  At the close of September 2000 hearing the ALJ explained that the results from the consultative report would be submitted into evidence and sent to plaintiff's counsel with opportunity for comment and option to request a supplemental hearing.  (Tr. at 324-25.)  This same instruction was provided in a letter to plaintiff's counsel dated October 30, 2000, which was sent with a copy of Dr. Iofin's results.  (Tr. at 275-76.)  Plaintiff neither submitted comments nor requested a supplemental hearing on the results.  Furthermore, although the ALJ did not have Dr. Iofin's results available when posing questions to the vocational expert, the ALJ did note the vocational expert had opportunity to hear the testimony regarding plaintiff's mental state and treatment history as well as opportunity to review the previous psychological evaluations and reports that summarized plaintiff's depression.  Therefore, the record reflects the ALJ did give consideration to all of the medical results, the opinions of the vocational experts as well as the plaintiff's credibility in finding there were jobs available in the national economy that plaintiff could perform.

Accordingly, the Court finds that there is sufficient evidence on the record to support the decision of the ALJ.  Plaintiff's appeal is denied.

_____s/_____

Stanley R. Chesler, U.S.D.J.

Dated: May 5, 2005